UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BRETT CHRISTIAN, FIREARMS POLICY COALITION, INC., and SECOND AMENDMENT FOUNDATION

                          Plaintiffs,

v.

STEVEN A. NIGRELLI, in his official capacity as Superintendent of the New York State Police, and JOHN J. FLYNN, in his official capacity as District Attorney for the County of Erie,

                          Defendants.

No. 22-cv-00695 (JLS)

## STATE'S SUR-REPLY[1] IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

LETITIA JAMES
Attorney General
State of New York
350 Main Place, Suite 300A
Buffalo, New York 14202

Ryan L. Belka
James M. Thompson
Assistant Attorneys General
Of Counsel

---

[1] Plaintiffs have consented to Defendant Nigrelli's filing of "an approximately 5 page" Sur-Reply in this matter.

i

Plaintiff's November 16, 2022 deposition in this matter further demonstrates that he lacks standing to contest the sections of the Concealed Carry Improvement Act ("CCIA") challenged by this lawsuit. The Supplemental Declaration of Ryan L. Belka; Exhibit 1. Importantly, Plaintiff admits that the CCIA has not been enforced against him and he openly discounts public statements made by political leaders and Defendant Nigrelli concerning the enforcement of the CCIA. Deposition of Brett Christian (Christian Dep.), 30:17-31:17; 78:25-81:20; and 84:3-9.

> Q. Okay. As it relates to the sections of the CCIA that you have challenged related to private property, have you been arrested under that provision?
> A. As of currently today, I have not been arrested.
> Q. Have you been approached by law enforcement to arrest you for violations of the CCIA regarding the sections on private property?
> A. As of today, I have not.
> Q. Have you been arrested related to the sections relating to New York State Parks that you have challenged under the CCIA?
> A. As of today, I have not.
> Q. Have you been approached by law enforcement to enforce the New York State Parks provisions of the CCIA?
> A. As of today, I have not.
> Q. Have you been arrested related to the public transportation sections of the CCIA that you have challenged in this lawsuit?
> A. As of today, I have not.
> Q. And have you been approached by law enforcement regarding the public transportation sections of the CCIA that you have challenged in this lawsuit?
> A. As of today, I have not.
> Christian Dep., 30:17-31:17
>
> Q. Right. So in the case of Adirondack Park, right, you would not be comforted by the statements of political leaders or the leader of the State Police that Adirondack Park is not -- that we are not going to enforce the CCIA in Adirondack Park, right?
> A. Correct.
> Christian Dep., 81:14-20
>
> Q. But either way you didn't make this trip despite political leaders and the representations that have been made in this case because that's not enough for you to be assured that the CCIA wouldn't be enforced in Adirondack Park?
> A. Correct.
> Christian Dep., 84:3-9

1

This Court's pre-enforcement standing analysis in *Hardaway,* hinged largely on public statements by political leaders and Defendant Nigrelli to establish "'threatened enforcement of a law' that is 'sufficiently imminent' to establish standing. *See Hardaway v. Nigrelli,* Index No. 22-cv-771, [ECF No. 52], Preliminary Injunction Order at p. 8-9. In addition, this Court took the *Hardaway* Plaintiffs' reaction to those public enforcement statements into account when analyzing individual plaintiff standing. *Id.*

Although Plaintiff's Memorandum of Law cites to, and relies on, the same public comments as the *Hardaway* Plaintiffs, Christian disclaims the effect that public statements of political leaders and Defendant Nigrelli have had on him regarding the enforcement of the CCIA. *See* Christian Dep., 78:25-81:20; 84:3-9. Here, unlike the *Hardaway* Plaintiffs, Christian has refused to take political leaders' public statements at face value and has not altered his conduct in response. *Id.* Because Christian is unwilling to take the public enforcement statements of political leaders and Defendant Nigrelli at face value, their public comments can no longer be relied on to establish that the "threatened enforcement of the law" is "sufficiently imminent" in order to establish standing. As such, and following this Court's logic in *Hardaway*, Plaintiff lacks standing for the additional reason that he he gives no credence to public statements concerning the enforcement of the CCIA by political leaders and Defendant Nigrelli.

On matters of public transportation, Plaintiff lacks standing as he has not experienced any enforcement or attempted enforcement of the CCIA and, in fact, he has never seen a member of the State Police on the NFTA Metro Rail (interchangeably the Buffalo light rail), his only regular mode of public transportation. Christian Dep., 31:10-17; 53:18-19, 55:14-24, 58:16-59:2. Additionally, Christian discredits enforcement statements by political leaders and the state police. 78:25-81:20; 84:3-9.

Plaintiff's testimony also establishes that he has not been irreparably harmed by the CCIA's carriage prohibition on public transportation. Christian Dep. 40:17-23, 42:1-6; 42:7-12; 42:13-18; 43:22-24; 49:15-52:4. Plaintiff testified that he has ready access to private vehicular transportation, which can be used to accomplish trips to downtown Buffalo, including the trip to attend his deposition. *Id.*

Notably, Plaintiff, who chose to drive unarmed to downtown Buffalo in lieu of taking the light rail[2] for his deposition at Phillips Lytle, blamed his carriage status on provisions of the CCIA (or his inability to decipher whether or not carriage would be allowed in *his lawyer's* office building.) Christian Dep., 49:15-52:4. In reality, no provision of the CCIA prevented Plaintiff from concealed carry at the deposition held at his lawyer's office. Mr. Christian assumed, without checking, that some provision of the CCIA would prevent him from carrying, and instead of making a phone call to his own counsel to determine if his lawyer's office allowed private carry, Plaintiff instead remained willfully blind, content to blame the CCIA for his perceived inability to carry. *Id.* Plaintiff's conduct at his deposition is representative of much of the claimed irreparable harm attributed to provisions of the CCIA, which fails to withstand any scrutiny.

As to matters of private property, Plaintiff lacks standing because he has not experienced any enforcement or attempted enforcement of the CCIA's private property provision and he discredits enforcement statements by political leaders and the state police. Christian Dep. 30:17 – 31:17; 78:25-81:20; 84:3-9. Plaintiff's broad attribution, that the CCIA's private property

---

[2] Plaintiff's Declaration [ECF No. 19-4], which limits when he takes public transportation downtown to "when traffic or events downtown made driving impractical," is apparently incomplete. Plaintiff's deposition identifies public transportation as more of choice (i.e. "it's simply a matter of this is faster and easier. I don't have to worry and deal with the hassle of [parking].") Christian Dep. 53:24-54:10. Matters of convenience, as testified to here, do not establish irreparable harm.

3

provision has decreased the frequency in which he leaves the house armed, remains a paradox. On the one hand, Plaintiff is willfully obtuse in general scenarios, while conceding that he understands when and where he is prohibited from carriage on private property within the specific real-world scenarios that he was questioned about. Christian Dep., 95:20-96:25; 96:20-25; 97:0.-98:2; 110:17-111-14. Plaintiff agreed that he understood his carriage rights, through viewing conspicuous signage, or lack thereof, at Valu Hardware, Tops, Wegmans, Cabellas, Danny's, Ottos, Tim Hortons and Delta Sonic. *Id.* Moreover, Plaintiff clearly understands that the lack of signage communicates the private property owner's carriage preference and Plaintiff agrees that a private property owner should be able dictate carriage rights on his property. *Id;* Christian Dep., 49:15-52:4; 70:23-71:17. Plaintiff's inability to take what is being communicated to him at face-value is a non-starter and does not constitute irreparable harm.

Plaintiff's articulated irreparable harm from the CCIA's private property provision is assumptive, ephemeral, and speculative. While Plaintiff testifies to potential unease from passersby as he stores his weapon safely in his vehicle's tailgate, he also explains that he understands that individuals regularly access their tailgate for benign purposes, such as loading cargo, and that the entire process of disarming and storing his firearm takes approximately 30 seconds. Christian Dep., 101:18-104:3; 104:12-105:11.

Plaintiff's recognition that a private property owner has the right to disallow carriage reveals that, at its base, Plaintiff's disagreement is the manner in which the owner's property right is communicated. Christian Dep., 70:23-71:17. In the end, Plaintiff's alleged harm is a disagreement that is a matter of policy. In other words, the CCIA's private property provision does not implicate the 2nd Amendment or cause irreparable harm. It's a policy decision between the two defaults – appropriately (and historically) made by state legislatures.

4

As to public parks, Plaintiff lacks standing as he has not experienced any enforcement or attempted enforcement of the CCIA's Public Parks Provision and he discredits enforcement statements by political leaders and the state police.  Christian Dep. 30:17 – 31:17; 78:25-81:20; 84:3-9.

Plaintiff's convenient testimony, that he rarely, if ever, used public parks prior to receiving his concealed carry license at the age of 37, then - while armed - became a nemophilist, only to completely abandon visitation to public parks upon the passage of CCIA, is beyond far-fetched. Christian Dep. 59:8-60:5; 61:13-25; 131:8-139:6.  It strains credulity to believe that Mr. Christian simply sheltered in place until the age of 37 when he applied for a handgun permit and only then transformed into an outdoorsman.

Lastly, Plaintiff's declaration [ECF No. 19-4] submitted in support of Plaintiff's Motion for Preliminary Injunction is woefully insufficient and, as it turns out, intentionally vague by design – as Plaintiff admitted that certain known details were omitted from his declaration. Christian Dep., 27:2-28:4; 31:24-32:25; 75:17-77:15; 85:1-6; 113:5-114:11; 114:14-115:2; 116:18-117:18.  While Plaintiff testifies that he spent 6-8 hours revising and reviewing the information to make sure his declaration was as "accurate as [he] possibly could" make it; Plaintiff admits to omissions in that declaration, the reasons for which remain shrouded, as he was directed not to answer probing questions as to why those facts were omitted from his declaration.  *Id.*

Plaintiff's deposition testimony further demonstrates that he lacks standing in this matter and that the challenged provisions of the CCIA have not caused him irreparable harm.  As such, and in conjunction with Defendant's Memorandum in Opposition, the Declaration of Ryan L. Belka, Esq., the Declaration of Dr. Brennan Rivas, and the Declaration of David J. State, Esq. [ECF Nos. 33-35], Defendants request Plaintiffs' motion for a preliminary injunction be denied.

Dated: Buffalo, New York
       November 21, 2022

                                LETITIA JAMES
                                Attorney General
                                State of New York

                                By: /s/ Ryan L. Belka
                                RYAN L. BELKA
                                JAMES M. THOMPSON
                                Assistant Attorneys General
                                350 Main Place, Suite 300A
                                Buffalo, NY 14202
                                (716) 853-8440
                                Ryan.Belka@ag.ny.gov