UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRETT CHRISTIAN, et al., | )     Case No. 1:22-cv-00695-JLS |
| Plaintiffs, | ) |
| v. | ) |
| STEVEN A. NIGRELLI, et al., | ) |
| Defendants. | ) |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THEIR MOTION
FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................... iii

INTRODUCTION ....................................................................................1

FACTS .................................................................................................1

ARGUMENT ...........................................................................................2

    I.    The violation of constitutional rights ordinarily warrants a finding of irreparable harm. ...2

    II.    Similar to the First Amendment, the violation of the fundamental, intangible rights protected by the Second Amendment is irreparable. ...........................................4

    III.    The State's arguments to the contrary are meritless. .........................................7

CONCLUSION...........................................................................................13

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page**

*Agudath Israel of Am. v. Cuomo*, 983 F.3d 620 (2d Cir. 2020)..........................................3, 5, 9, 10

*A.H. by & through Hester v. French*, 985 F.3d 165 (2d Cir. 2021).....................................1, 2

*Antonyuk v. Bruen*, No. 1:22-cv-734, 2022 WL 3999791 (N.D.N.Y. Aug. 31, 2022) ..................8

*Bery v. City of New York*, 97 F.3d 689 (2d Cir. 1996)......................................................3

*Bronx Household of Faith v. Bd. of Educ. of City of New York*, 331 F.3d 342 (2d Cir. 2003)........3

*Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617 (1989) ...............................1, 4

*Christian v. Nigrelli*, 22-CV-695 (JLS), 2022 WL 17100631 (W.D.N.Y. Nov. 22, 2022)...........12

*Connecticut Dept. of Env't Prot. v. O.S.H.A.*, 356 F.3d 226 (2d Cir. 2004)...................................3

*Covino v. Patrissi*, 967 F.2d 73 (2d Cir. 1992)................................................................3

*Def. Distributed v. U.S. Dept. of State*, 121 F. Supp. 3d 680 (W.D. Tex. 2015) ...........................8

*Dist. of Columbia v. Heller*, 554 U.S. 570 (2008) ..............................................6, 7, 9, 12

*Duncan v. Becerra*, 265 F. Supp. 3d 1106 (S.D. Cal. 2017) ...............................................6

*Duncan v. Becerra*, 742 Fed. Appx. 218 (9th Cir. 2018) .................................................6

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ...........................................5, 6, 9, 10, 11, 12

*Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110 (2d Cir. 2009) ........................1, 5

*Fotoudis v. City & Cnty. of Honolulu*, 54 F. Supp. 3d 1136 (D. Haw. 2014) ...............................8

*Frein v. Pennsylvania State Police*, 47 F.4th 247 (3d Cir. 2022)............................................9

*Grace v. Dist. of Columbia*, 187 F. Supp. 3d 124 (D.D.C. 2016)..........................................6

*Guns Save Life, Inc. v. Raoul*, 2019 IL App (4th) 190334 ...............................................8

*Hartford Courant Co., LLC v. Carroll*, 986 F.3d 211 (2d Cir. 2021) ...................................3

*Int'l Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67 (2d Cir. 1996) .........................................2

*Johnson v. Connolly*, 378 F. App'x 107 (2d Cir. 2010)...................................................3

*Jolly v. Coughlin*, 76 F.3d 468 (2d Cir. 1996) ............................................................3

*Jones v. Bonta*, 34 F.4th 704 (9th Cir. 2022)...............................................................7

*Jones v. Bonta*, 47 F.4th 1124 (9th Cir. 2022)..............................................................7

*Kane v. De Blasio*, 19 F.4th 152 (2d Cir. 2021) ........................................................2, 3

*League of Women Voters of the United States v. Newby*, 838 F.3d 1 (D.C. Cir. 2016)................12

*Lynch v. City of New York*, 589 F.3d 94 (2d Cir. 2009)...............................................3, 4

*McDonald v. City of Chicago*, 561 U.S. 742 (2010).....................................................1, 4

*McDougall v. Cnty. of Ventura*, 23 F.4th 1095 (9th Cir. 2022).............................................7

*McDougall v. Cnty. of Ventura*, 26 F.4th 1016 (9th Cir. 2022)...........................................7

iii

*McDougall v. Cnty. of Ventura*, 38 F.4th 1162 (9th Cir. 2022)....................................7

*Mitchell v. Cuomo*, 748 F.2d 804 (2d Cir. 1984)...........................................................3

*Molloy v. Metro. Transp. Auth.*, 94 F.3d 808 (2d Cir. 1996).......................................11

*Montgomery v. Louisiana*, 577 U.S. 190 (2016)...........................................................9

*Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012).......................................................10

*Morris v. U.S. Army Corps of Eng'rs*, 990 F. Supp. 2d 1082 (D. Idaho 2014) .....................8, 11

*Mullins v. City of New York*, 626 F.3d 47 (2d Cir. 2010)...........................................12

*New York v. Dep't of Homeland Sec.*, 969 F.3d 42 (2d Cir. 2020)................................12

*New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483 (2d Cir. 2013).....................5, 6, 10, 11

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111
(2022)...........................................................................1, 4, 6, 7, 9, 10, 11, 12

*Rhode v. Becerra*, 445 F. Supp. 3d 902 (S.D. Cal. 2020).......................................6, 7, 8

*Rhode v. Bonta*, 20-55437, 2022 WL 17099119 (9th Cir. Nov. 17, 2022)....................................6

*Rigby v. Jennings*, CV 21-1523 (MN), 2022 WL 4448220 (D. Del. Sept. 23, 2022)...............8, 12

*Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020)....................................3, 5, 10

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010) ............................................5, 11

*Schad v. Borough of Mt. Ephraim*, 452 U.S. 61 (1981)................................................10

*Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317 (2d Cir. 1999) .................3

*Yang v. Kosinski*, 960 F.3d 119 (2d Cir. 2020)................................................3

## Other Authorities

WRIGHT & MILLER, 11A FED. PRAC. & PROC. CIV. § 2948.1 (3d ed.)............................................3

## INTRODUCTION

The ordinary rule in this Circuit and in courts around the country is that the denial of a constitutional right *is* an irreparable injury. *A.H. by & through Hester v. French*, 985 F.3d 165, 184 (2d Cir. 2021). As there is no "hierarchy of constitutional rights," and the Second Amendment is not a "second-class right," the ordinary irreparability standard that governs other constitutional cases must govern the irreparability analysis in Second Amendment cases. *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 628 (1989); *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2156 (2022) (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010) (plurality)). To hold otherwise would be to "subject" the Second Amendment "to an entirely different body of rules than the other Bill of Rights guarantees," which the Supreme Court has repeatedly instructed courts *not* to do. *Id*. Moreover, the Second Amendment protects fundamental, intangible interests—much like the First Amendment—and such interests are quintessentially irremediable by damages and are irreparable after the fact. A court cannot go back in time to restore readiness for self-defense or the security it provides, any more than a court could restore an individual's ability to speak at a certain time and place; once the constitutionally protected opportunity to speak or be ready for self-defense is lost, it is "lost forever." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). Accordingly, notwithstanding the State's arguments, this Court should hold that Plaintiffs' Second Amendment injuries are irreparable and enjoin the State's ban on carrying for self-defense in public parks and on public transportation.

## FACTS

Plaintiff Christian's carrying of firearms outside of the home "has been reduced to almost nonexistent" since the enactment of S51001. *See* Doc. 47-1, Deposition of Brett Christian 130:19–23, 122:25–128:5 (Nov. 16, 2022) ("Christian Dep."). For instance, prior to the enactment of

1

S51001's public park ban, he would hike in Stiglmeier Park in Cheektowaga "[a]pproximately[] two to three times a month." *Id*. at 123:9. Now, he no longer goes and hikes there because he "can't guarantee [his] safety or have the means to protect [himself]." *Id.* at 123:21–22. If the public park ban were enjoined and Christian "could exercise [his] constitutional right to be able to have a pistol or revolver for [his] self-defense if the need arose," he would return to Stiglmeier Park. *Id*. at 124:9–12, 17–19. Prior to S51001's public park ban, Christian would visit and carry for self-defense on certain portions of the Clarence Bike Path "two to three times a week." *Id*. at 127:13. And he would return if the ban were enjoined. *Id*. at 127:22. These parks are in addition to others Christian would visit, carry for self-defense, and to which he has not returned or no longer carries in. *See id*. at 85:9–92:245; Declaration of Brett Christian, Doc. 19-4 ¶¶ 7–8 (Sept. 26, 2022) ("Christian Decl."). Christian has experienced similar Second Amendment harms with respect to public transportation. Prior to S51001, Christian would take NFTA Metro Rail "two to three times a month." Christian Dep. 44:5, 45:3–5; 53:12–13. Now, if he takes public transportation—as he most recently did on November 13, 2022—he is unable to carry for self-defense. *Id*. at 53:20–23; Christian Decl. ¶ 9. The inability to carry for self-defense in public parks and on public transportation has left Christian "without the ability to defend [himself]" in these locations and "suffering diminished personal safety." Christian Decl. ¶ 12.

## ARGUMENT

I.   **The violation of constitutional rights ordinarily warrants a finding of irreparable harm.**

"The denial of a constitutional right ordinarily warrants a finding of irreparable harm, even when the violation persists for 'minimal periods' of time." *A.H. by & through Hester*, 985 F.3d at 184 (quoting *Int'l Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 71 (2d Cir. 1996)). The Second Circuit has reaffirmed this time and time again. *See, e.g., Kane v. De Blasio*, 19 F.4th 152, 170 (2d

Cir. 2021); *Hartford Courant Co., LLC v. Carroll*, 986 F.3d 211, 224 (2d Cir. 2021); *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 636 (2d Cir. 2020); *Johnson v. Connolly*, 378 F. App'x 107, 108 (2d Cir. 2010) (summary order); *Lynch v. City of New York*, 589 F.3d 94, 99 (2d Cir. 2009); *Connecticut Dept. of Envtl. Prot. v. O.S.H.A.*, 356 F.3d 226, 231 (2d Cir. 2004); *Bronx Household of Faith v. Bd. of Educ. of City of New York*, 331 F.3d 342, 350 (2d Cir. 2003); *Bery v. City of New York*, 97 F.3d 689, 693 (2d Cir. 1996); *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996); *Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir. 1992); *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984). With this mountain of precedent, the Second Circuit finds itself squarely in the mainstream of constitutional litigation throughout the country. "When an alleged deprivation of a constitutional right is involved, such as the right to free speech or freedom of religion, most courts hold that no further showing of irreparable injury is necessary." WRIGHT & MILLER, 11A FED. PRAC. & PROC. CIV. § 2948.1 (3d ed.) (collecting cases).

While many times the irreparability of harm flows from the various rights protected by the First Amendment, *see e.g.*, *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020), these precedents are by no means limited to the First Amendment context. The Second Circuit has understood the violation of constitutional rights to cause irreparable injury when the injury stems from the denial of Fourth Amendment rights, *Lynch*, 589 F.3d at 99, Eighth Amendment rights, *Mitchell*, 748 F.2d at 806; *accord Johnson*, 378 F. App'x at 108, the right to participate in elections, *Yang v. Kosinski*, 960 F.3d 119, 129 (2d Cir. 2020), a claimed constitutional right to privacy, *Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999), and the constitutional solicitude for state sovereign immunity, *Connecticut Dept. of Envtl. Prot.*, 356 F.3d at 231.

3

The violation of a Second Amendment right must be considered equally irreparable. There is no "hierarchy among . . . constitutional rights." *Caplin*, 491 U.S. at 628. And if there were any doubt, the Supreme Court has twice made clear the Second Amendment is not a "second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *Bruen*, 142 S. Ct. at 2156 (quoting *McDonald*, 561 U.S. at 780 (plurality)). The State may argue that, notwithstanding the clear command of the Supreme Court, the alleged public safety rationale behind the State's firearms restrictions somehow justifies a different irreparability analysis. Not so. The Supreme Court rejected such a Second-Amendment-is-different argument in *McDonald*, with the lead opinion noting that it is "not the only constitutional right that has controversial public safety implications." 561 U.S. at 783 (plurality). This statement was reiterated by a majority of the Court in *Bruen*. 142 S. Ct. at 2126 n.3. "All of the constitutional provisions that impose restrictions on law enforcement and on the prosecution of crimes fall into the same category." *McDonald*, 561 U.S. at 783 (plurality). And, in any event, this is not a distinction the Second Circuit appears to have drawn for irreparability. For instance, the Second Circuit has already found irreparability in the Fourth Amendment context regarding a NYPD breathalyzer policy designed to remedy instances of officer-involved shootings. *Lynch*, 589 F.3d at 99. There is no basis to conclude that a plaintiff's irreparable harm from a violation of his Second Amendment rights is somehow lessened by allegations of an effect on public safety.

## II.    Similar to the First Amendment, the violation of the fundamental, intangible rights protected by the Second Amendment is irreparable.

The nature of the interests protected by the Second Amendment provides strong reasons for courts to treat Second Amendment injuries similar to First Amendment injuries for purposes of irreparability. *Cf. Bruen*, 142 S. Ct. at 2130 (noting similarity between Second Amendment and First Amendment analyses). In the context of a preliminary injunction, an irreparable injury is a

harm "that (a) occurs to the parties' legal interests and [that] (b) cannot be remedied after a final adjudication, whether by damages or a permanent injunction." *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010). "Harm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer." *Id*. In the First Amendment context, harm is irreparable because (a) the protected legal interests involve, for instance, the right to speak in a certain place at a certain time or freely exercise religion in a certain way and (b) these injuries cannot be remedied after adjudication because of the "intangible nature of the benefits flowing from the exercise of those rights; and the fear that, if those rights are not jealously safeguarded, persons will be deterred, even if imperceptibly, from exercising those rights in the future." *Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011) (internal quotation marks omitted); *see also Roman Cath. Diocese*, 141 S. Ct. at 67–68 (explaining irreparable harm because "remote viewing is not the same as personal attendance"); *Agudath Israel of Am.*, 983 F.3d at 636 (highlighting that allowing for religious practice with "modifications" was still irreparable injury); *New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (explaining the importance of "timing" to political speech where "a delay of even a day or two may be intolerable"). The intangible benefits from being present at religious services or speaking at the time that one wishes to cannot be quantified into a measure of damages. And even if these could, the fundamental nature of these rights is such that one "should not be expected to suffer" their loss. *Salinger*, 607 F.3d at 81. After all, once specific constitutionally protected opportunities to speak or worship have come and gone, they are "lost forever." *Faiveley Transp.*, 559 F.3d at 118.

The Second Amendment protects no less fundamental, yet intangible, rights for which neither damages nor delayed vindication after judgment can repair. *Ezell*, 651 F.3d at 699–700

("[F]or reasons related to the form of the claim and the substance of the Second Amendment right, the plaintiffs' harm is properly regarded as irreparable and having no adequate remedy at law."). The Second Amendment protects the right to bear arms for self-defense, which is to say to be "armed *and ready* for offensive or defensive action in a case of conflict with another person." *Bruen*, 142 S. Ct. at 2134 (quoting *Dist. of Columbia v. Heller*, 554 U.S. 570, 584 (2008)) (emphasis added). Because this is a right "*for* self-defense," it is "a right that can be infringed upon whether or not plaintiffs are ever actually called upon to use their weapons to defend themselves." *Grace v. Dist. of Columbia*, 187 F. Supp. 3d 124, 150 (D.D.C. 2016). "The right to bear arms enables one to possess not only the means to defend oneself but also the self-confidence—and psychic comfort—that comes with knowing one could protect oneself if necessary." *Id*. One cannot regain that peace of mind or readiness after the fact or after the time when such self-defense readiness proves necessary. *See Heller*, 554 U.S. at 595 (noting that the Second Amendment protects individuals when "the intervention of society in his behalf, may be *too late* to prevent an injury"); *cf. New York Progress & Prot. PAC*, 733 F.3d at 486 (noting irreparability for free speech because a "delay" of the speech would be "intolerable"). Accordingly, "loss of that peace of mind . . . and the loss of enjoyment of Second Amendment rights constitutes irreparable injury." *Rhode v. Becerra*, 445 F. Supp. 3d 902, 954 (S.D. Cal. 2020), *vacated and remanded on other grounds sub nom. Rhode v. Bonta*, 20-55437, 2022 WL 17099119 (9th Cir. Nov. 17, 2022) (remanding to the district court for proceedings consistent with *Bruen*); *see also Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1135 (S.D. Cal. 2017), *aff'd*, 742 Fed. Appx. 218, 200 n.1 (9th Cir. 2018) (noting California only made a "cursory argument" relating to, *inter alia*, irreparable harm).

**III.    The State's arguments to the contrary are meritless.**

In this case, the State may argue that the burden imposed by its location-specific bans is temporary, therefore not irreparable. The restrictions at issue here apply only while ordinary, law-abiding New Yorkers are in public parks or are on public transportation.[1] Yet "there is no reason that the loss of Second Amendment freedoms even for 'minimal periods of time' would not . . . constitute irreparable injury." *McDougall v. Cnty. of Ventura*, 23 F.4th 1095, 1112 (9th Cir. 2022), *reh'g en banc granted, opinion vacated*, 26 F.4th 1016 (9th Cir. 2022), *and on reh'g en banc*, 38 F.4th 1162 (9th Cir. 2022) (remanding for proceedings consistent with *Bruen*); *see also Jones v. Bonta*, 34 F.4th 704, 732 (9th Cir. 2022), *opinion vacated on reh'g on other grounds*, 47 F.4th 1124 (9th Cir. 2022) (remanding for proceedings consistent with *Bruen*) (explaining that a "violation" of the Second Amendment "is not reparable just because it is definite in duration: a harm need not last indefinitely to be irreparable"). It is again a right to be "*ready* for offensive or defensive action." *Bruen*, 142 S. Ct. at 2134 (quoting *Heller*, 554 U.S. at 584) (emphasis added). "[T]he need for armed protection in self-defense can arise at a moments' notice and without warning. People don't plan to be robbed in their homes in the dead of night or to be assaulted while walking through city streets" or while in parks or on public transportation. *McDougall*, 23 F.4th at 1112. Yet "[i]t is in these unexpected and sudden moments of attack that the Second Amendments' rights to keep and bear arms becomes most acute." *Id*. "When one needs to defend herself, family, or property right now, but is defenseless" because of a Second Amendment violation, that "is the heaviest kind of irreparable harm." *Rhode*, 445 F. Supp. 3d at 954.

---

[1] Contrary to any argument from the State about a temporary burden, Plaintiffs have elsewhere argued that public transportation ban is particularly burdensome because "[t]he State's ban effectively bars carrying before the journey, while on the journey, and after the journey." Plaintiffs' Reply Br., Doc. 46 at 13 (Nov. 18, 2022).

7

It is, therefore, unsurprising that numerous courts, in addition to the above-cited, have held that a Second Amendment violation causes irreparable harm. *Rigby v. Jennings*, CV 21-1523 (MN), 2022 WL 4448220, at *11 (D. Del. Sept. 23, 2022) ("Plaintiffs face irreparable harm in the absence of an injunction because they are threatened by criminal penalties should they engage in conduct protected by the Second Amendment."); *Antonyuk v. Bruen*, No. 1:22-cv-734, 2022 WL 3999791, *36 (N.D.N.Y. Aug. 31, 2022) (finding irreparable harm, in part, because of plaintiff's "diminished safety in all the locations that he currently carries his concealed handgun that he will not be able to carry it"); *Guns Save Life, Inc. v. Raoul*, 2019 IL App (4th) 190334, ¶ 52, 146 N.E.3d 254, 277 ("In light of the second amendment protections extended to the preexisting natural right to keep and bear arms, a statute which violates that right, if shown to do so, would cause irreparable harm."); *Def. Distributed v. U.S. Dept. of State*, 121 F. Supp. 3d 680, 689 (W.D. Tex. 2015) ("The Court . . . has little trouble concluding Plaintiffs have shown they face a substantial threat of irreparable injury."); *Fotoudis v. City & Cnty. of Honolulu*, 54 F. Supp. 3d 1136, 1145 (D. Haw. 2014) ("He has also suffered 'an irreparable injury'—he has been deprived of a constitutionally-protected right."); *Morris v. U.S. Army Corps of Eng'rs*, 990 F. Supp. 2d 1082, 1089 (D. Idaho 2014) ("[I]rreparable harm is likely because the plaintiffs have made out a colorable claim that their Second Amendment rights have been threatened.").

The State may argue that the existence of alternative forms of transportation or of other recreational sites not considered "public parks" reduces the irreparability of Plaintiffs' harm, *i.e.*, Plaintiffs have alternatives to carry somewhere else. This is meritless as even "reduced harm is still unlawful harm." *Rhode*, 445 F. Supp 3d at 954. And, at bottom, the State's argument is an attempt to treat the Second Amendment unlike other constitutional rights that protect intangible interests. To phrase it another way, the State's argument is, even if this Court finds that the Second

Amendment protects Plaintiff Christian's intended conduct to carry in parks and on public transportation, this Court should *still* not enjoin the State from arresting and prosecuting individuals for carrying in these places. But "[a]n unconstitutional law is void, and is as no law." *Montgomery v. Louisiana*, 577 U.S. 190, 204 (2016). Every day an unconstitutional restriction is left in place and under which state enforcement officials act is one day too many. *Cf. Ezell*, 651 F.3d at 698 ("If they're right, then the range ban was unconstitutional when enacted and violates their Second Amendment rights every day it remains on the books."). This is perhaps why irreparable harm is ordinarily intertwined with the merits in constitutional cases. *Agudath Israel of Am.*, 983 F.3d at 637 ("Because the deprivation of First Amendment rights is an irreparable harm, in First Amendment cases the likelihood of success on the merits is the dominant, if not the dispositive, factor." (internal quotation marks omitted)).

Moreover, the Second Amendment—like other constitutional rights—cannot be so easily manipulated under the guise of "alternatives." *Cf. Frein v. Pennsylvania State Police*, 47 F.4th 247, 256 (3d Cir. 2022) ("We would never say the police may seize and keep printing presses so long as newspapers may replace them, or that they may seize and keep synagogues so long as worshippers may pray elsewhere. Just as those seizures and retentions can violate the First Amendment, seizing and holding on to guns can violate the Second."). The Supreme Court rejected such an alternatives argument in *Heller*, when the District of Columbia sought to argue that there was no Second Amendment violation because one could exercise it in some other way by carrying long guns. *See Heller*, 554 U.S. at 629. *Bruen* is no less unequivocal: the Second Amendment extends to carrying a firearm for self-defense "outside the home." 142 S. Ct. at 2122. Unless the State demonstrates "exceptional circumstances," backed by the relevant history, that carrying firearms can be banned in a certain place, the State must permit carry in *that* place. *Id.* at 2156.

When an individual is outside the home, the Second Amendment guarantees that individual the intangible benefit of self-defense in the places he happens to lawfully be.[2]

The Seventh Circuit's decision in *Ezell* is particularly persuasive here. That case involved a ban on firing ranges in Chicago. There, it was argued that the plaintiff could exercise his Second Amendment rights outside the city, thus there was no irreparable harm; instead the only harm was whatever marginal time and cost it took to reach a firing range outside city limits. 651 F.3d at 697. The court explained that this was based on a "profoundly mistaken assumption." *Id*. "In the First Amendment context, the Supreme Court long ago made it clear that 'one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place.'" *Id.* (quoting *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 76–77 (1981)). The Seventh Circuit added that "[i]t's hard to imagine anyone suggesting that Chicago may prohibit the exercise of a free-speech or religious-liberty right within its borders on the rationale that those rights may be freely enjoyed in the suburbs." *Id*. It is thus no wonder that neither the Supreme Court nor the Second Circuit have asked if there was some other Catholic church or some other synagogue that plaintiffs could go to for exercising their First Amendment rights. *Roman Cath. Diocese*, 141 S. Ct. at 67–68; *Agudath Israel of Am.*, 983 F.3d at 636. Nor has the Second Circuit asked if there were some other means for individuals to speak or if individuals could speak

---

[2] *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), discussed location-specific limits as somehow imposing a "lesser burden" because "a person can preserve an undiminished right of self-defense by not entering those places," *Id*. at 940. This is not only dicta, but it is no longer good law as *Bruen* established that individuals have an *undiminished* right to self-defense "outside the home." *Bruen*, 142 S. Ct. at 2122. Moreover, this passage comes in a discussion of how an alleged lesser burden on the Second Amendment required the State to not "prove so strong a need" to justify its regulation. *Moore*, 702 F.3d at 940. After *Bruen*, it is beyond dispute that the Second Amendment does not countenance interest balancing, let alone with respect to particular places. *Bruen*, 142 S. Ct. at 2129. The *only* means of justifying a ban on carrying in particular places is based on history, which, in this case, the State has not "affirmatively prove[d]" can justify either S51001's public park or public transportation ban. *Id*. at 2127.

at some *other* time to determine if the infringement of their rights was irreparable. *New York Progress & Prot. PAC*, 733 F.3d at 486. Such inquiries "should be no less unimaginable in the Second Amendment context." *Ezell*, 651 F.3d at 697. If the right extends to a certain location, the denial of that right is irreparable. *See, e.g., Morris*, 990 F. Supp. 2d at 1086 (finding irreparable harm for individual who sought to bring his firearm in a "temporary" "tent" in an Army Corps of Engineers recreation area.).

The Second Circuit's decision in *Molloy v. Metro. Transp. Auth.*, 94 F.3d 808 (2d Cir. 1996) is not to the contrary. The issue in that case involved staffing changes at Long Island Railroad stations and the installation of automatic ticket vending machines at those stations. *Id.* at 810. The court held that the plaintiffs were not irreparably harmed by these policies because the court could not "say that the extra inconvenience" of having to purchase tickets on-board a train, by mail, or at certain "destination stations" "rises to the level of irreparable harm." *Id.* at 813. But this convenience analysis has no bearing on the irreparable harm inquiry in the present case because irreparability turns on identifying the "*legal* interests" at stake. *Salinger*, 607 F.3d at 81 (emphasis added). In *Molloy*, the legal interest was in public transportation accommodations under the Americans with Disabilities Act, when such accommodations were "feasible." 94 F.3d. at 810. This legal interest necessarily requires an evaluation of the relative burdens of a government policy on certain individuals and the feasibility of any accommodation by the government; whether something is an inconvenience (that the government need not accommodate) is relevant to that inquiry. By contrast, the legal interest here is of a different nature; the Second Amendment is a constitutional right that permits no balancing of "costs and benefits" and no evaluation of the "severity of the law's burden." *Bruen*, 142 S. Ct. at 2126. Instead, the Second Amendment "'is the very *product* of an interest balancing by the people' and it 'surely elevates above all other interests

11

the right of law-abiding responsible citizens to use arms' for self-defense." *Id.* at 2131 (quoting *Heller*, 554 U.S. at 635). In other words, the Second Amendment interest is protected by an "unqualified command." *Id*. at 2126. As discussed above, *this interest* cannot be measured—unlike the interest in *Molloy*—by whether a "particular person's gasoline or mass transit bill is higher" in the absence of an injunction. *Ezell*, 651 F.3d at 699.

Finally, the State may argue that the harm to Plaintiffs is not irreparable because it is speculative. It is true that "irreparable harm" must be "neither remote nor speculative, but actual and imminent." *New York v. Dep't of Homeland Sec.*, 969 F.3d 42, 86 (2d Cir. 2020). Yet here the Second Circuit has looked to "largely similar harms" as the plaintiffs' injuries which demonstrate standing. *Id*. (citing *League of Women Voters of the United States v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016) (looking to same injuries to establish standing and irreparable harm)). In the absence of an injunction, there is nothing speculative about what will happen if Plaintiff Christian carries in the parks he frequents or on public transportation: the State has said he "will be arrested. Simple as that." *Christian v. Nigrelli*, 22-CV-695 (JLS), 2022 WL 17100631, at *4 (W.D.N.Y. Nov. 22, 2022). Because of this threat, Plaintiff Christian has been deterred from carrying in parks and on public transportation since the effective date of S51001. Because "[t]he standard for preliminary injunctive relief requires a threat of irreparable harm, not that irreparable harm already have occurred . . . the risk of deterrence" of protected activity "is sufficient to satisfy the irreparable harm standard." *Mullins v. City of New York*, 626 F.3d 47, 55 (2d Cir. 2010); *see also Rigby*, 2022 WL 4448220, at *11 (finding irreparable harm because of "threat[]" of "criminal penalties.").

**CONCLUSION**

For the foregoing reasons and as stated in Plaintiffs' prior briefing, this Court should preliminarily enjoin the State's ban on carrying for self-defense in public parks and on public transportation.


Respectfully submitted, this 2nd day of December 2022.

Nicolas J. Rotsko
PHILLIPS LYTLE LLP
One Canalside
125 Main Street
Buffalo, NY 14203-2887
(716) 847-5467
(716) 852-6100 (fax)
NRotsko@phillipslytle.com

/s/ David H. Thompson
David H. Thompson*
Peter A. Patterson*
John W. Tienken*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
jtienken@cooperkirk.com

*Admitted *pro hac vice*

13

## CERTIFICATE OF SERVICE

I hereby certify I filed the foregoing with the Clerk of the District Court using its CM/ECF system on this 2nd day of December 2022.

/s/ David H. Thompson
David H. Thompson

14