# Cooper & Kirk
### Lawyers
A Professional Limited Liability Company

| | | |
|---|---|---|
| David H. Thompson<br>dthompson@cooperkirk.com | 1523 New Hampshire Avenue, N.W.<br>Washington, D.C. 20036 | (202) 220-9600<br>Fax (202) 220-9601 |

September 26, 2024

**VIA CM/ECF**
Hon. John L. Sinatra
United States District Court for the Western
   District of New York
Robert H. Jackson United States Courthouse
2 Niagara Square
Buffalo, New York 14202

      **RE:** *Christian v. James*, **No. 1:22-cv-695**

Dear Judge Sinatra,

Plaintiffs submit the following letter brief addressing the additional topics raised by the Court at argument over the pending cross-motions for summary judgment.

    **I.**    **FPC and SAF have standing to seek injunctive relief under *Ex parte Young*.**

Regardless of whether FPC and SAF can assert a Section 1983 claim on behalf of their members, it would not be appropriate to dismiss them from this case, because they have standing to bring a suit in equity under *Ex parte Young*. *See id.* at 10–12. In *Ex parte Young*, the Supreme Court held that federal courts have authority to grant injunctive relief against a state official who has "some connection with the enforcement of [an allegedly unconstitutional] act." 209 U.S. 123, 157 (1908). The Supreme Court has long held that "the availability of prospective relief of the sort awarded in *Ex parte Young* gives life to the Supremacy Clause. Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law." *Green v. Mansour*, 474 U.S. 64, 68 (1985), *reh'g denied* 474 U.S. 1111 (1986); *see also Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015) ("[A]s we have long recognized, if an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted."). Though the Second Circuit had previously suggested that " '*Ex parte Young* and its progeny

[show] that the Supremacy Clause creates an implied right of action for injunctive relief against state officers who are threatening to violate the federal Constitution or laws,' " *Burgio & Campofelice, Inc. v. N.Y. State Dep't of Labor*, 107 F.3d 1000, 1006 (2d Cir. 1997) (quoting 13B CHARLES A. WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC.: JURIS. 2d § 3566, at 102 (1984)), the Supreme Court in *Armstrong* clarified that "[t]he ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England," 575 U.S. at 327; *see also Davis v. Shah*, 821 F.3d 231, 245 (2d Cir. 2016) (noting that *Armstrong* corrected *Burgio*'s reasoning regarding the source of the authority to enjoin state officials). As such, this remedial power lies within "the equity jurisdiction of the federal courts," which "is the jurisdiction in equity exercised by the High Court of Chancery in England at the time of the adoption of the Constitution and the enactment of the original Judiciary Act [in] 1789." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318 (1999) (quotation marks omitted).

The practical difference between the regimes described in *Armstrong* and *Burgio* is that, under *Armstrong*, Congress can limit the Court's ability to consider the constitutionality of a challenged law in equity either explicitly or implicitly. *See* 575 U.S. at 327–28. But where Congress has not done so, there is a presumption in favor of making equitable relief from unconstitutional conduct available. *See Bell v. Hood*, 327 U.S. 678, 684 (1946) ("[I]t is established practice for this Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution and to restrain individual state officers from doing what the 14th Amendment forbids the state to do."). Here, the ordinary availability of equitable relief is dispositive, since Plaintiffs' have challenged the constitutionality of a State statute and Congress has in no way limited this Court's ability to hear such a challenge.

A plaintiff states a claim for relief under *Ex parte Young* as long as the " 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.' " *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)); *see also Safe Haven Home Care, Inc. v. U.S. Dep't of Health & Human Servs.*, 681 F. Supp. 3d 195, 208 (S.D.N.Y. 2023). Plaintiffs have done so here. Both FPC and SAF have alleged that their members in New York are suffering ongoing harm from the Defendants' enforcement or threatened enforcement of the no-carry default rule and the bans on firearms on public transportation and in public parks. *See* Pls.' Br. in Supp. of Summ. J., Doc. 73-1 at 1–2 (Mar. 1, 2024). Both FPC and

SAF have standing to pursue this cause of action on behalf of their members because, as discussed in Plaintiffs' summary judgment briefs, both are membership organizations who seek to redress injuries to their members that are germane to their organizational purposes, and both seek declaratory and injunctive relief. *See* Pls.' Resp. at 10–12; *see also, e.g.*, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023).

As a result, and as Plaintiffs have explained, the United States Supreme Court and courts in this circuit repeatedly have recognized that an association has standing to sue in equity on behalf of its members. *See* Pls.' Resp. at 11–12 (collecting cases). To provide another example, in *Clearing House Association v. Spitzer*, 394 F. Supp. 2d 620 (S.D.N.Y. 2005), for instance, the court permitted an association of commercial banks to seek an injunction against the Attorney General of New York on behalf of its members to block enforcement actions under the Fair Housing Act which the association viewed as violating the National Bank Act. *Id.* at 624. In so doing, the court concluded, in reliance on *Ex parte Young*, that "the U.S. Supreme Court has long made clear that actions such as this one that seek to enjoin state officials from interfering with federal rights present a federal question over which federal courts have jurisdiction." *Id.* Plaintiffs' FPC and SAF's claims should, therefore, be permitted to proceed, at a minimum, as suits in equity under *Ex parte Young*.

## II. If the Court finds in Plaintiffs' favor on the default no-carry restriction, it should not stay its injunction.

At argument, counsel for the State requested that, should this Court find the default no-carry restriction unconstitutional and order its enforcement enjoined, it should stay the effect of that order pending appeal. There would be no basis for doing so.

"Four criteria are relevant in considering whether to issue a stay of an order of a district court or an administrative agency pending appeal: the likelihood of success on the merits, irreparable injury if a stay is denied, substantial injury to the party opposing a stay if one is issued, and the public interest." *Mohammed v. Reno*, 309 F.3d 95, 100 (2d Cir. 2002). The Second Circuit has endorsed the position that "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff[] will suffer absent the stay. Simply stated, more of one excuses less of the other." *Id.* at 101 (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)) (brackets in *Mohammed*). In this case, should this Court find in favor of Plaintiffs on the no-carry default rule, there will be an extremely high probability of success on

that claim on appeal and a stay would be particularly inappropriate, given that the Second Circuit has already reviewed this issue and found that Plaintiffs are likely to succeed in showing that provision is unconstitutional. *See Antonyuk v. Chiumento*, 89 F.4th 271, 385 (2d Cir. 2023).[1] Indeed, *Antonyuk* already reviewed the same laws the State relies on in its motion for summary judgment and rejected the argument that they evidence a tradition of banning firearms on private property open to the public. *Id.*; *see also* Pls.' Resp. at 21. And as Plaintiffs have already explained, none of the State's additional arguments on summary judgment alter that conclusion. *See* Pls.' Resp. at 22–24.

The only new development, following briefing in this case, that could conceivably impact this analysis, is the Ninth Circuit's decision in *Wolford v. Lopez*, in which it became the first court anywhere in the country to endorse any version of the no-carry default rule. *See* 2024 WL 4097462, at **21–24 (9th Cir. Sept. 6, 2024). But *Wolford* should not guide this Court's analysis or cause it to question, at all, the Second Circuit's conclusions with respect to the no-carry default in *Antonyuk*. In concluding that California's no-carry default rule was unconstitutional, the *Wolford* panel based its decision on misreading the historical record as including some laws that banned firearms on "<u>any</u> private property without the owner's consent" whether open to the public or not. *Id.* at *23 (emphasis in original). Specifically, *Wolford* relied on two "historical 'dead ringers,' " a 1771 New Jersey Law and an 1865 Louisiana law. *Id.* But *Antonyuk* reviewed those very same laws and concluded that they referred specifically to "private land not open to the public," and so were disanalogous to the default no-carry law. *Antonyuk*, 89 F.4th at 386. And as Plaintiffs have since shown, there were other good reasons to ignore these laws, beginning, for example, with the fact that the 1865 Louisiana law was part of the State's infamous "Black Codes." Pls.' Resp. at 22. Plaintiffs are therefore likely to succeed in showing the default no-carry law unconstitutional on appeal and a stay should be denied.

The other three factors all also favor Plaintiffs. Most importantly, if this Court finds that the State has failed to justify the no-carry default rule and still issues a stay, then Plaintiffs will be in the position of suffering a continued deprivation of their fundamental constitutional rights despite this Court (twice) and the Second Circuit (once) finding that the law is at least likely unconstitutional. It is the ordinary

---

[1] Although the Second Circuit did enter a temporary stay pending appeal with respect to this provision during the preliminary injunction stage of this case, *see* Order, *Christian v. Nigrelli*, No. 22-2987 (2d. Cir. Dec. 12, 2022), Doc. 40, that was before the appeals court itself concluded Plaintiffs were likely to succeed in showing that provision is unconstitutional.

rule in this circuit that "a strong showing of constitutional deprivation that results in noncompensable damages ordinarily warrants a finding of irreparable harm." *A.H. by & through Hester v. French*, 985 F.3d 165, 176 (2d Cir. 2021); *see also, e.g.*, *Kane v. De Blasio*, 19 F.4th 152, 170 (2d Cir. 2021); *Hartford Courant Co., LLC v. Carroll*, 986 F.3d 211, 224 (2d Cir. 2021); *Conn. Dep't of Env't Prot. v. OSHA*, 356 F.3d 226, 231 (2d Cir. 2004). The Second Amendment is " 'not a second-class right' " and the same rules apply here. *N.Y. State Rifle & Pistol Assoc., Inc. v. Bruen*, 597 U.S. 1, 70 (2023) (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010) (plurality op.)); *see also Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011) (holding that, like the First Amendment, the Second Amendment provides "intangible … benefits" for the loss of which an individual cannot be compensated). Indeed, this Court has explicitly, and the Second Circuit implicitly, recognized as much in granting and then affirming the preliminary injunction on this issue in this case. *Christian v. Nigrelli*, 642 F. Supp. 3d 393, 408–09 (W.D.N.Y. 2022) ("[T]here 'can be no question that the challenged restrictions, if enforced, will cause irreparable harm.' " (quoting *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 67 (2020)); *Antonyuk*, 89 F.4th at 386. And given the State has effectively attempted an end-run around *Bruen* and sought to render the right to public carry of firearms meaningless, the loss of a constitutional freedom is particularly acute. *See* Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytical Framework and a Research Agenda*, 56 UCLA L. REV. 1443, 1515 (2009) ("Whenever people are in … prohibited places—places where they have a right to be, and often have a practical need to be—they are barred from protecting themselves with a firearm.").

On the other hand, the State would suffer no harm, and the public interest would in fact be advanced, if the Court denied a stay of injunction. Although "the State has an interest in administering its laws without interference by federal equitable power, that interest is diminished when the laws at issue likely impinge a federal constitutional right." *French*, 958 F.3d at 184. The State is likely to claim that an injunction would advance public safety, but it would not; the Supreme Court has made clear that New York can have no legitimate interest in "prevent[ing] law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms," *Bruen*, 597 U.S. at 71, and the Second Amendment itself enshrines the foundational principle that our society is benefitted by law-abiding citizens bearing arms for self-defense. As this Court has previously found, the State cannot show that "lawful carrying of firearms on private property has resulted in an increase in handgun violence, or that public safety would be impaired if the private property restriction is enjoined." *Christian*, 642 F. Supp. 3d at 409. The Court should therefore

decline to enter a stay of injunction if it finds the no-carry default rule unconstitutional.

        Sincerely,

        <u>s/David H. Thompson</u>
        David H. Thompson
        COOPER & KIRK, PLLC
        1523 New Hampshire Ave., NW
        Washington, DC 20036
        (202) 220-9600
        dthompson@cooperkirk.com

        *Counsel for Plaintiffs-Appellants*

cc: All counsel of record via CM/ECF